UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

   Ronald Scott Labo,                                   Case No. 12-45101-MBM
                                                                      Chapter 7
                           Debtor. /                       Hon. Marci B. McIvor

Stuart A. Gold, Trustee,

        Plaintiff,

vs.                                                                Adv. Pro. No. 12-5121

Karin A. Kopko,

                           Defendant.    /

**OPINION GRANTING TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

       This matter is before the Court on plaintiff/trustee Stuart Gold's Motion for Partial Summary Judgment. Plaintiff seeks judgment on Count I of a two-count adversary complaint. Count I of the complaint alleges that pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (a)(1)(B), Debtor fraudulently transferred real property to defendant Karin A. Kopko. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is granted.

**I. Facts**

       On April 25, 1997, defendant Karin Kopko (debtor Ronald Kopko's mother) and her husband Charles Kopko (hereinafter "the Kopkos") granted the Bancorp Group, Inc. ("Bancorp"), a mortgage on property located at 30646 Turtle Creek, Farmington Hills, Michigan ("Turtle Creek property").

       The Kopkos defaulted on payments to Bancorp and on August 16, 1999, they

deeded the Turtle Creek property to Bancorp by way of a deed-in-lieu of foreclosure. On that same date, the Kopkos quit claimed their interest in the Turtle Creek property to Bancorp. (See Exhibits A - D, attached to Defendant's Supplemental Brief, hereinafter "Def. Supp. Brief Ex. __".) On August 16, 1999, Bancorp also entered into a land contract with the Kopkos. The land contract provided for monthly payments in the amount of $3,583.33. (Def. Supp. Brief Ex. E).

On May 16, 2001, the Kopkos assigned their purchasers' interest in land contract to Kays Zair. The assignment was recorded on July 18, 2001. (Def. Supp. Brief Ex. Q). On June 19, 2001, Bancorp assigned its seller's interest in the land contract between Bancorp and the Kopkos to Kays Zair. (See Exhibit R, attached to Plaintiff's Supplemental Brief, hereinafter "Pl. Supp. Br. Ex. __). The assignment was recorded on July 18, 2001. On June 19, 2001, Zair purchased the Turtle Creek property from Bancorp for $275,000.00. Title to the property was transferred by a Warranty Deed from Bancorp to Zair. The Warranty Deed was recorded on July 13, 2001. (Plaintiff's Motion for Summary Judgment, Ex. A).

Between 2001 and 2009, Charles Kopko, debtor Ronald Labo, and Kays Zair were involved in several businesses together. Debtor had a 50% ownership interest in SFS Check, LLC, one of those businesses. SFS Check maintained its bank account at Fifth Third Bank. Debtor had check signing authority on the Fifth Third Bank account. (See Deposition of Ronald Labo at 14-16, attached as Exhibit M to Defendant's Supplemental Brief, hereinafter referred to as "Labo Dep. at __"). By 2009, Zair was interested in selling both his interest in SFS Check and the Turtle Creek property. (See Deposition testimony of Kays Zair at 35-37, attached as Exhibit N to Defendant's

2

Supplemental Brief, hereinafter referred to as "Zair Dep. at __"). The sale of the stock and the Turtle Creek property took place on December 31, 2009. On that date, the following transactions occurred:

> (1) Zair and Debtor entered into a Stock Purchase Agreement whereby Debtor purchased Zair's 40% interest in SFS Check, LLC for $150,000.00 and 250 shares of stock in COA Holding, Inc. (Plaintiff's Motion for Summary Judgment Ex. B).
>
> (2) Zair and his wife executed a quit claim deed transferring their interest in the Turtle Creek property to Debtor and his wife. The quit claim deed was recorded on January 20, 2010.
>
> (3) Debtor gave Zair a cashier's check for $150,000.00. The cashier's check was drawn on the bank account of SFS Check LLC at Fifth Third Bank.
>
> (4) Zair signed a promissory note in which he promised to pay Debtor $150,000.00 in exchange for a loan in that same amount. The promissory note granted "the lender [Debtor] a security interest in the 250 shares of stock the borrower [Kays Zair] has in COA Holdings, Inc." (Plaintiff's Motion for Summary Judgment Ex. D).

Zair received the $150,000.00 loan proceeds, but the loan was never repaid. (Zair Dep. at 42-46).

On February 3, 2011, Debtor and his wife executed a quit claim deed transferring their interest in the Turtle Creek property to defendant Karin A. Kopko. (Plaintiff's Motion for Summary Judgment Ex. E). The deed noted that the transfer was a gift and "not for consideration." The deed was recorded on March 30, 2011. At the time of the transfer of the Turtle Creek property, Debtor was unemployed and was also a defendant in multiple lawsuits. (Labo Dep. at 52).

On March 2, 2012, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Included on Debtor's Statement of Financial Affairs is the transfer of

3

the Turtle Creek property to his mother on February 3, 2011.  The description of the transaction on the Statement of Financial Affairs is "transfer of property located at 30646 Turtle Creek, Farmington Hills, Michigan.  Was mother's property previously - was sold to a third party, then transferred to Debtor on December 31, 2009 and then gifted back to recipient on February 3, 2011." (See Statement of Financial Affairs, ¶10.)

On June 14, 2012, Plaintiff filed the present two- count adversary complaint alleging that the February, 2011 transfer of the property was fraudulent pursuant to 11 U.S.C.  §§ 548(a)(1)(A) and (a)(1)(B) (Count I),  and a preferential transfer pursuant to 11 U.S.C. § 547(b) (Count II).  On November 7, 2012, Plaintiff filed a Motion for Partial Summary Judgment as to Count I.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or in a case under Title 11.  28 U.S.C. §§ 1334 and 157.   These maters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).

## III. Standard for Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c).  Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks and citation omitted).

## IV. Analysis

Count I of Plaintiff's Complaint alleges that the February, 2011 transfer of the Turtle Creek property by way of quit claim deed from Debtor to his mother was a fraudulent conveyance recoverable by Plaintiff pursuant to 11 U.S.C. § 548(a)(1)(B). That section states, in relevant part:

> (a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

5

>           . . .
>
>                (B)   (I) received less than a reasonably equivalent value in
>                      exchange for such transfer or obligation; and
>
>                      (ii)(I) was insolvent on the date that such transfer was
>                      made or such obligation was incurred, or became
>                      insolvent as a result of such transfer or obligation;

To prevail on a complaint to set aside a transfer on the grounds of constructive fraud pursuant to § 548(a)(1)(B), a trustee must show: (1) that the debtor had an interest in the property transferred; (2) that the transfer occurred within two years of the petition date; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) that the debtor received less than reasonably equivalent value in exchange for the transfer. *Stinson v. Stinson (In re Stinson)*, 364 B.R. 278 (Bankr. W.D. Ky. 2007).

Based on the record, this Court is satisfied that Plaintiff has established all the elements of a fraudulent transfer action under 11 U.S.C. § 548(a)(1)(B). First, on December 31, 2009, Kays Zair transferred the Turtle Creek property to Debtor by way of a quit claim deed. "A quit claim deed is, by definition, a deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid." *Michigan Dep't of Natural Resources v. Carmody-Lahti Real Estate, Inc.*, 472 Mich. 359, 377-78 (2005). Even though the transfer was by quit claim deed, Zair, the seller, had obtained the Turtle Creek property by warranty deed in 2001. At the time Zair obtained the warranty deed from Bancorp, all encumbrances on the property (including the land contract of Kopkos) had been extinguished. Therefore, Mr Zair transferred valid title to Debtor on December 31, 2009. Debtor

retained ownership of the Turtle Creek property until February 3, 2011. On February 3, 2011, he transferred the property to Defendant by way of a quit claim deed.[1] There is no question that Debtor owned the Turtle Creek property at the time he transferred the property to his mother. Second, the transfer of the property occurred less than two years prior to the filing of Debtor's bankruptcy case. Third, it is undisputed that Defendant was insolvent at the time of the transfer, as he was unemployed and a defendant in multiple lawsuits. Lastly, it is undisputed that Defendant paid no more than $10.00 for the transfer of the property.[2]

Defendant Karin Kopko does not dispute the validity of any of the transfers discussed above, nor does she dispute that she paid no consideration for the Turtle Creek property. Defendant raises two defenses to the Trustee's claim that Debtor's transfer of the Turtle Creek property to her was a fraudulent transfer. First, she asserts that there is no evidence to show that the $150,000 used to pay Zair in December, 2009 was Debtor's money. The check was drawn on the SFS Check's bank account. Defendant argues that the $150,000.00 payment was not intended to pay off the balance owed on the Turtle Creek property but was intended to pay for Zair's shares in SFS Check.

---

[1] There is a handwritten note on the deed stating that consideration of $10.00 was paid to Debtor. The note may have been added to the document at some point after it was executed by Debtor, his wife, and Defendant.

[2] The document which most clearly demonstrates the transfer of title of the Turtle Creek property between 1999 and 2011 is a report from the Oakland County Public Records attached as Exhibit L to Defendant's Supplemental Brief. The document summarizes the grantor and grantee on deeds related to the Turtle Creek property, the sale date of the property, the type of deed, and the liber and page number where the document is recorded.

7

12-05121-mbm    Doc 31    Filed 02/07/13    Entered 02/07/13 11:53:21    Page 7 of 11

There are two problems with this argument. First, as a matter of law, it does not matter who paid the amount owed to Zair for the Turtle Creek property or exactly how the payment was allocated. Those facts are immaterial in assessing whether Defendant's subsequent transfer of the Turtle Creek property was a fraudulent transfer. It is undisputed that on December 31, 2009, Zair transferred all right, title and interest in the Turtle Creek property to Debtor and Debtor, at that time, became the owner of the property. Between December 31, 2009 and February 3, 2011, Debtor could have sold the property to a third party, or obtained a mortgage on the property. No other party had an interest in the Turtle Creek property superior to that of Debtor. On the date the property was transferred to Debtor, the asset had a value of more than $200.000. (Zair Dep. at 45). On February 3, 2011, Debtor transferred his interest to Defendant. He received no consideration for the transfer. Debtor clearly transferred an asset he owned to Defendant for far less than reasonably equivalent value.

The second problem with Defendant's argument that Debtor never really purchased the Turtle Creek property from Zair is that it is directly contradicted by the deposition testimony of both Debtor and Zair. In his deposition, Debtor was asked by Plaintiff/ Trustee about the purchase of the Turtle Creek property from Zair:

> Q. Did you have discussions directly with Kay Zair or his wife, Patricia, about you acquiring the 30646 Turtle Creek Farmington Hills property?
>
> A. I never had a discussion with his wife. I remember I had asked him - - my brother [sic] and I both had asked him, you know, "What is it going to take to get my mom's house back?"
>
> Q. Because he was the owner of it?
>
> A. Correct. And he says, "You guys just got to pay me some money."

8

> He goes, "Somebody's got to buy me out, buy my house, buy it, give me the money that I put into it." And that was it.
>
> . . .
>
> Q. You withdrew $150,000 from the SFS Check, LLC account and purchased a check to Mr. Zair to acquire the deed; isn't that true?
>
> A. Correct.

(Labo Dep. at 42-43; 45-46). Zair was also asked by Plaintiff/ Trustee about the transfer of the Turtle Creek property to Debtor:

> Q. Did you talk to Karin Kopko about the transfer of the property to Ronald Labo?
>
> A. At that time?
>
> Q. Yes.
>
> A. December?
>
> Q. Yes.
>
> A. I don't think so.
>
> Q. Well, why was the property transferred to Ronald, because he was the one paying you the money?
>
> A. Correct. He was the one paying me the money and Ronald always said, you know, you're holding the house, it's my mom's house, I want to help her out. Okay, pay me the money or whoever pays me can get it. Whoever wants my stock in this house, God bless them.
>
> Q. Right.
>
> A. I want out of this thing and that's what I wanted.
>
> Q. So, the source of the payout wasn't Karin Kopko or Charles Kopko, Ronald paid the $150,000?
>
> A. I can't tell you where he got the money from, all I can tell you is Ron handed me the checks.

9

(Zair Dep. at 47).

Defendant's assertion that it is unclear who actually paid Zair $150,000.00 for the Turtle Creek property, and unclear whether the $150,000.00 was paid for the specific purpose of acquiring the property, is not supported by the deposition testimony. Even without the deposition testimony, the record clearly establishes the elements of a fraudulent conveyance action as a matter of law.

While Defendant's second defense to Plaintiff's fraudulent transfer action is not well articulated, she appears to be asserting that she always had an interest in the Turtle Creek property and therefore could not have been the recipient of a fraudulent transfer. It may be true that Defendant always resided in the Turtle Creek property, however, the record proves that Defendant had no ownership interest in the real property between May 16, 2001 and February 3, 2011. On May 16, 2001, Defendant and her husband Charles Kopko assigned their purchaser's interest in a land contract on the Turtle Creek property to Zair.[3] It is undisputed that Zair owned the Turtle Creek property from 2001 to December 31, 2009. While the Kopkos continued to reside in the property, they were renters, not owners. (Zair Dep. at 31). On December 31, 2009, Zair transferred his interest in the Turtle Creek property to Debtor. As reflected in both the quit claim deed to Debtor and the Oakland County Public Records, Debtor remained the title owner of the Turtle Creek property until February 3, 2011.

The Court finds that there is nothing in the record to support Defendant's

---

[3]For a full explanation as to the circumstances surrounding the assignment of Defendant's land contract interest to Mr. Zair and the transfer by warranty deed of the Turtle Creek property to Zair, see Deposition of Kay Zair at pp. 19-28.

argument that she had an ownership interest in the Turtle Creek property sufficient to defeat the Trustee's fraudulent transfer action.

## V. Conclusion

For the reasons set forth above, Plaintiff has established all the elements of a fraudulent transfer action against defendant Karin Kopko. Plaintiff is entitled to summary judgment on Count I of the Complaint. The quit claim deed from Debtor to Defendant is voided and the Turtle Creek property is revested in Debtor's estate.

Signed on February 07, 2013

```
            /s/ Marci B. McIvor
            Marci B. McIvor
            United States Bankruptcy Judge
```